28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NIZAM'S INSTITUTE OF MEDICAL SCIENCES, a University
established by statute, Plaintiff-Appellant,
v.
EXCHANGE TECHNOLOGIES, INCORPORATED; Vinod Bhalla,
Defendants-Appellees,
and
FONAR CORPORATION, Defendant.
 No. 93-2196.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 5, 1994.
Decided July 5, 1994.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Chief District Judge. (CA-92-1638-B)
 
 
 2
 Shamala J. Bhat, Durvasula S. Sastri, Law Offices of Shamala J. Bhat, P.C., Silver Spring, MD, for appellant.
 
 
 3
 Jay B. Shuster, Baltimore, MD, for appellees.
 
 
 4
 D.Md.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WILKINSON, WILLIAMS and MICHAEL, JJ.
 
 OPINION
 PER CURIAM
 
 7
 Nizam's Institute of Medical Sciences (N.I.M.S.), an Indian research hospital and medical school, sought to buy a magnetic resonance imaging machine (MRI) here in the United States. N.I.M.S. negotiated with Exchange Technologies, Inc. (E.T.I.), for the purchase of an MRI manufactured by Fonar Corporation. E.T.I.'s negotiations took place primarily through its representative, Dr. Vinod Bhalla. It was clear from the tone of correspondence that E.T.I., through Bhalla, believed that this sale of an MRI to N.I.M.S. would be a significant break for them in the potential MRI market in India.
 
 
 8
 The two parties eventually signed a contract for the purchase, delivery and maintenance of the MRI. The contract contained a forum selection clause in paragraph 11. "The Contractors hereby further agree that no suit in regard to any matter whatsoever arising under or by virtue of this Agreement shall be instituted in any court save a court of competent jurisdiction at Hyderabad (ANDHRA PRADESH)." The term "Contractors" is defined on a cover page to the contract.
 
 
 9
 AN AGREEMENT made ... between M/s. Exchange Technologies Inc. ... and the Nizam's Institute of Medical Sciences, Andhra Pradesh, hereinafter called the Contractors, which expression shall unless excluded by or repugnant to the subject or context, include their successors, representatives, heirs, executors and administrators of the one part and the Director, the Nizam's Institute of Medical Sciences, Andhra Pradesh (hereinafter called the Nizam's Institute of Medical Sciences, Andhra Pradesh which expression shall unless excluded by or repugnant to the subject or context, include his successors in office and assigns) of the other part.
 
 
 10
 The contract is signed on each page by Bhalla and Kakarla Subbarao as Director of N.I.M.S. Bhalla signed the final page of the contract "/s/ Vinod K. Bhalla, Contractors Signature (M/s. Exchange Technologies, Inc. Baltimore, Maryland, U.S.A.)." In addition, a witness completed the "Acknowledgements" under the "Forms of Certificates" in the space reserved for acknowledgement "By a Corporation." That section noted that Bhalla appeared as the president of E.T.I. and was authorized by the corporation to execute the contract.
 
 
 11
 The MRI was delivered and worked with "intermittent breakdowns" for just over a year. When it failed in November 1990, "efforts were made" to repair it, but they were ultimately unsuccessful. In June 1992, the time N.I.M.S. filed this suit, the MRI was still not functional. N.I.M.S. brought this action in the District Court for the District of Maryland alleging breach of contract, breach of warranty, and a rather vaguely pled "misrepresentation" claim. N.I.M.S. named as Defendants E.T.I., Bhalla in his personal capacity, and Fonar Corporation. E.T.I. and Bhalla moved to dismiss the action pursuant to Fed.R.Civ.P.12(b)(3) and 12(b)(6), respectively.
 
 
 12
 N.I.M.S. filed an opposition to the motion and E.T.I. and Bhalla filed a reply. After oral argument, the district court granted the motion to dismiss as to the two Defendants, finding that Bhalla had not intended to be personally bound by the contract and that the forum selection clause of the contract applied to both parties and was binding. N.I.M.S. noted a timely appeal to the order and amended the notice to delete Fonar after those two parties reached a settlement agreement.
 
 
 13
 This case was brought pursuant to the diversity jurisdiction of the district court. 28 U.S.C. Sec. 1332 (1988). Generally, a federal court must decide diversity cases in accordance with state law. Erie R.R. v. Tompkins, 304 U.S. 64 (1938). The district court should apply the substantive law of the forum state. See Brendle v. General Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir.1974).
 
 
 14
 N.I.M.S. initially contends that the forum selection clause should not apply to it. It bases this contention on two theories. First, it argues that the word "contractors" in the forum selection clause refers only to E.T.I. and Bhalla. Second, and in the alternative, N.I.M.S. argues that even if the word "contractors" includes it, the forum selection clause should not be valid because it would be "unreasonable and unjust." Apparently, though not explicitly, N.I.M.S. believes that the forum selection clause as applied to it violates due process. Neither of these arguments has merit and the district court's order dismissing as to E.T.I. based on the forum selection clause will be affirmed.
 
 
 15
 N.I.M.S.'s first argument hinges on a review of the district court's finding that the word "contractors" in the document meant all the parties to the contract. The district court concluded that the contract was not ambiguous on its face and applied it accordingly. Such a conclusion is a determination of law, World-Wide Rights Ltd. Partnership v. Combe, Inc., 955 F.2d 242, 245 (4th Cir.1992), which this Court reviews de novo on appeal from a grant of summary dismissal. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3652 (U.S.1992). N.I.M.S. places great emphasis on what it describes as the "qualifier clause" in the definition of contractors. N.I.M.S. argues the "unless excluded by or repugnant to the subject or context" language limits when "contractors" includes both parties. This reading is strained at best. The first portion of the contract includes the language: "M/s. Exchange Technologies, Inc., [address] and the Nizam's Institute of Medical Sciences,[address], hereinafter called the Contractors." This phrase is quite simply too unequivocal to leave the reader with any interpretation other than that the contracting parties intended the term to mean each of them. The contract is unambiguous on its face and should be given its ordinary meaning. N.I.M.S.'s first argument must fail.
 
 
 16
 Alternatively, N.I.M.S. argues that the forum selection clause should not be given effect because its enforcement would be "unreasonable" or "unjust."[1] See The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972). A forum selection clause is generally binding and should be enforced unless the party seeking to void it can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." The Bremen, 407 U.S. at 15; see also Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991); Mercury Coal & Coke, Inc. v. Mannes-mann Pipe & Steel Corp., 696 F.2d 315 (4th Cir.1982). N.I.M.S. does not argue that the clause is invalid for reasons of fraud or overreaching. It contends only that the application of the clause would be "unjust or unreasonable." According to N.I.M.S., the clause should not be enforced because an Indian court would not be a court of competent jurisdiction. N.I.M.S. contends that an Indian court would lack any kind of jurisdiction over E.T.I. and that forcing it to bring a suit against E.T.I. in India would leave it with essentially no remedy.
 
 
 17
 A forum selection clause "should control absent a strong showing that it should be set aside." The Bremen, 407 U.S. at 15. The party seeking to void the clause should "clearly show that enforcement would be unreasonable and unjust." Id. A party claiming such a "seriously inconvenient" forum "should bear a heavy burden of proof." Id. at 16, 17 (emphasis in original). N.I.M.S. has not met that burden. Here, as in The Bremen, "it would be unrealistic to think that the parties did not conduct their negotiations, ... with the consequences of the forum clause figuring prominently in their calculations." The Bremen, 407 U.S. at 14 (footnote omitted); see also Carnival Cruise Lines, Inc., 499 U.S. at 593 (enforcing a forum selection clause despite the fact it was not specifically bargained for).
 
 
 18
 The bald assertion that India has not enacted a long arm statute, combined with the British "adage" that "the King's writ does not run beyond his real [sic]," is not sufficiently persuasive to ignore an otherwise valid forum selection clause. Even if this Court assumes that this scant information regarding Indian law is correct, these assertions do not bear the "heavy burden" to prove that it would be unjust or unreasonable to enforce the clause. See Carnival Cruise Lines, Inc., 499 U.S. at 595. Further, N.I.M.S. is an Indian organization, which is located in India and ordinarily subject to Indian law. N.I.M.S. should be charged with the knowledge of the legal implications of the clause. Because N.I.M.S. has not met the "heavy burden," it must bear the consequences of the contract that it signed. The district court's order dismissing E.T.I. pursuant to Rule 12(b)(3) must be affirmed.
 
 
 19
 N.I.M.S. also challenges the Rule 12(b)(6) dismissal of Bhalla in his personal capacity regarding the claim under the contract and the "misrepresentation" claim. Because these claims were also before the court pursuant to its diversity jurisdiction, Maryland law applies. As to the contract claim, "[t]he general rule is that one cannot be held to a contract to which he is not a party." Porter v. General Boiler Casing Co., 396 A.2d 1090, 1094 (Md.1979). N.I.M.S. seeks to avoid this general rule by claiming that Bhalla intended to be bound by the contract. In Maryland,
 
 
 20
 [w]hether an officer of a corporation, signing an agreement, means to bind himself personally, must, as a general rule, be determined by the face of the paper itself; "but where there is such ambiguity on the face of the paper as to be consistent with either construction, whether one means to bind himself personally, or acts only in an official capacity, parol evidence is clearly admissible to prove the circumstances under which the contract was made, or, in other words, to prove the true nature of the transaction."
 
 
 21
 Morrison v. Baechtold, 48 A. 926, 929 (Md.1901) (citations omitted).
 
 
 22
 In order for the district court to have considered the parol evidence N.I.M.S. offers as supportive of Bhalla's intent to be bound personally, there must be "ambiguity on the face of the paper as to be consistent" with both corporate and personal liability. Id. There is no such ambiguity here. The first page of the contract states that the agreement is between the two corporations. The contract does not refer to Bhalla in his personal capacity, or even mention his name. Bhalla signed on behalf of E.T.I., and the witness completed the certificate for signature by a corporation. The district court did not err in dismissing N.I.M.S.'s contract claim against Bhalla personally.[2] Regarding the "misrepresentation" claim against Bhalla personally, Maryland tort law recognizes a cause of action which is "variously known as fraud, deceit, or intentional misrepresentation." B.N. v. K.K., 538 A.2d 1175, 1182 (Md.1988). In Maryland, corporate officers "are personally liable for those torts which they personally commit, ... even though performed in the name of an artificial body." Tedrow v. Deskin, 290 A.2d 799, 802 (Md.1972). In order to state a claim for intentional misrepresentation in Maryland, a plaintiff must allege, among other elements, that a representation of the defendant was false and that "either its falsity was known to [the defendant] or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him." B.N., 538 A.2d at 1182. N.I.M.S. fails to allege that Bhalla's representations were false when he made them. Further, N.I.M.S. did not claim in its complaint that Bhalla knew that any of his representations about the service and performance of the MRI were false or that Bhalla made them with reckless indifference to whether they were truthful. Therefore, N.I.M.S. failed to state a claim for intentional misrepresentation on which relief could be granted. Dismissal under Rule 12(b)(6) was appropriate.
 
 
 23
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 This is, at least arguably, a question of substantive contract law to which state law should apply. See Sterling Forest Assoc., Ltd. v. Barnett-Range Corp., 840 F.2d 249, 251 (4th Cir.1988) (declining to decide whether clause is procedural or substantive but noting state and federal law were the same). Neither party raised this issue in its brief. Because it does not appear that the district court's application of federal law to the question is "inconsistent with substantial justice," see Fed.R.Civ.P.61, we decline to disturb this finding sua sponte
 
 
 [2]
 N.I.M.S.'s arguments grounded in Maryland transfer of title law and negotiable instrument law are, at best, unhelpful